UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CITY OF RENO, NEVADA,                             Case No. 3:20-cv-00499-MMD-WGC

                              Plaintiff,          ORDER

        v.

NETFLIX, INC., *et al.*,

                              Defendants.

I.      **SUMMARY**

        Plaintiff the City of Reno, Nevada has brought a class action lawsuit against Defendants Netflix, Inc. ("Netflix") and Hulu, LLC ("Hulu"), alleging that Defendants—as "video service providers"—have failed to pay franchise fees to various cities and counties in violation of Nevada Revised Statutes ("NRS") § 711.670. (ECF No. 1.) Before the Court are Defendants' motions to dismiss (ECF Nos. 28, 32 ("Motions")).[1] Because the Court finds Defendants do not provide "video service" as defined in NRS 711.141(3), NRS § 711.670 does not apply to Defendants, and Plaintiff further does not have a private right of action to bring this lawsuit—as further explained below—Defendants' Motions are granted.

II.     **BACKGROUND**

        A.      **Nevada Video Service Law**

        In 2007, the Nevada Legislature passed Assembly Bill 526 ("Video Service Law") to amend Chapter 711 of the Nevada Revised Statutes.[2] The amendment, NRS §§

_____

[1]The Court has additionally reviewed the parties' corresponding responses and replies. (ECF Nos. 37, 38, 44. 45.) Additionally, the Court heard oral argument on the Motions on September 30, 2020 ("the Hearing"). (ECF No. 98.)

[2]*See* Bill Summary, A.B. 526, 74th Legis. Sess. (N.V. 2007), https://www.leg.state. nv.us/Division/Research/Library/LegHistory/LHs/2007/AB526,2007.pdf. ("*Legis. Hist.*").

711.020-711.850, was in part "AN ACT . . . establishing a new regulatory structure for video service providers; requiring the Secretary of State to perform certain duties under the new regulatory structure; limiting the regulatory powers of local governments regarding video service providers; . . . providing remedies and penalties[.]" *See Legis. Hist.* at 433 (capitalization in original). The Video Service Law authorized local governments "to charge a video service provider a franchise fee for the privilege of providing service through a network that occupies or uses . . . any public right-of-way or highway within its jurisdiction. *See Legis. Hist.* at 3.

NRS § 711.670(1) provides in part that a ". . . local government may require a *video service provider* to pay a franchise fee to the local government based on the gross revenue that the provider receives from its subscribers within the jurisdiction of the local government." (emphasis added). Under the general provisions, "video service provider" is defined as "any person that provides or offers to provide *video service* over a video service network to subscribers in this State." NRS § 711.151(1) (emphasis added). "'Video service' means the provisions of multichannel video programming generally considered comparable to video programming delivered by a television broadcast station, cable service or other digital television service, whether provided as part of a tier, on-demand or on a per-channel basis, without regard to the technology used to deliver the video service, including, without limitations, Internet protocol technology or any successor technology." NRS § 711.141(1). The term, however, does not include "[a]ny video content provided solely as part of, and through, a service which enables users to access content,

---

The Court takes judicial notice of the legislative history of Assembly Bill 526. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citation omitted). However, a court may take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," such as information on government websites. Fed. R. Evid. 201; *see, e.g., Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of official information posted on a governmental website, the accuracy of which was undisputed).

information, electronic mail or other services that are offered via the public Internet." NRS § 711.141(3)(a).

Further relevant to this order, NRS § 711.850 sets forth the enforcement of the Video Service Law. This includes the following relevant paragraphs:

> 1. A video service provider or a local government may file with the Bureau of Consumer Protection a written complaint alleging a violation of the provisions of this chapter.
>
> 2. Upon a written complaint filed by a video service provider or a local government pursuant to this section, the Consumer's Advocate may commence in a district court an action to enforce the provisions of this chapter and seek equitable or declaratory relief.
>
> 3. If such an action is commenced against a video service provider and the district court determines that the provider has violated any provision of this chapter, the court shall issue an order to the provider directing the provider to take corrective action . . . .
>
> 6. As used in this section:
>
>> (1) "Bureau of Consumer Protection" means the Bureau of Consumer Protection in the Office of the Attorney General.
>>
>> (2) "Consumer's Advocate" means the Consumer's Advocate of the Bureau of Consumer Protection.

NRS § 711.850. Additionally, NRS § 711.410 establishes the duties and powers of the Secretary of State, regulations, and the limitations on the power of local governments. It provides in part that "[f]or the purposes of bringing about fair and reasonable competition for video service, the Secretary of State has the exclusive authority to issue a certificate of authority to a person to provide video service and construct and operate a video service network in any service area in this state." NRS § 711.410(1).

Moreover, NRS § 711.680 provides for the review and audit of video service providers. Subsection 4 states that "[a]ny action to recover a disputed underpayment of the franchise from a video service provider must be commenced and prosecuted by the Attorney General on behalf of the affected local governments. NRS § 711.680(4).

**B.    Alleged Violation**

The following allegations are adapted from Plaintiff's complaint (ECF No. 1). Plaintiff the City of Reno—as a local government—alleges that Defendants are in violation of NRS § 711.760 as they provide "video services" and are "video service providers." (*Id.*

7-8.) Thus, Defendants are required to obtain a certificate of authority from the Nevada Secretary of State and pay a franchise fee to local governments, neither of which Defendants have done. (*Id.* 7-8.) Plaintiff brings this action under 28 U.S.C. § 1332(a) on behalf of all Nevada cities and counties in which Defendants Netflix and Hulu provide video services to their subscribers. (*Id.* at 2-3, 5.)

Plaintiff alleges that subscribers of Netflix and Hulu can view video programing such as television shows, movies, and documentaries. (*Id.* at 3.) Both Defendants primarily "offer[] online streaming of a library of films and television series [or] programs." (*Id.* at 2.) Hulu additionally provides "online streaming of live video programming." (*Id.*) Subscribers can access these offerings "using an Internet-connected device." (*Id.* at 3.) Typically, subscribers use broadband internet connection—such as Digital Subscriber Line ("DSL") or fiber optic cables—to access Defendants' video services and Defendants provide those services via broadband wireline facilities, which are located in part in public rights-of-way. (*Id.* at 3-4.) Plaintiff further alleges that Defendants compete with other video service providers by offering video programming that is "comparable to that provided by cable companies and television-broadcast stations." (*Id.* at 3.)

## III.   LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

4

1

2    **IV.    DISCUSSION**

2          Defendants advance several overlapping arguments as to why this action should

3    be dismissed. (ECF Nos. 28 at 13-28, 32 at 11-32.) Because the Court finds the

4    arguments that (1) Defendants do not provide "video services" and (2) Plaintiff does not

5    have a private right of action under the Video Service Law to be dispositive, the Court

6    declines to resolve Defendants' other arguments. As such, the Court will set forth the

7    legal standard for statutory interpretation, then address the parties' arguments with

8    respect to the two dispositive issues and will conclude by granting Defendants' Motions.

9          **A.    Statutory Interpretation**

10          When interpreting a state statue, federal courts look to the state's rules of statutory

11    construction. *See United States v. Acevedo-De La Cruz*, 844 F.3d 1147, 1150 (9th Cir.

12    2017). If the state court has not construed a state statute, then a federal court must

13    interpret the state statute as the state's highest court would. *See Las Vegas Dev. Grp.,*

14    *LLC v. Yfantis*, 173 F. Supp. 3d 1046, 1053-54 (D. Nev. 2016) (citing *Planned Parenthood*

15    *of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004).

16          "In Nevada, words in a statute should be given their plain meaning unless this

17    violates the spirit of the act." *V & S Ry., LLC v. White Pine Cty.*, 211 P.3d 879, 882 (Nev.

18    2009) (internal quotes and citation omitted). "Where a statue is clear on its face, a court

19    may not go beyond the language of the statue in determining the [l]egislature's intent." *Id.*

20    (brackets omitted) (quoting *McKay v. Bd. of Supervisors*, 730 P.2d 438, 441 (Nev. 1986)).

21    However, courts should read the statue in a manner that gives weight to all its parts so

22    each word and phrase is "meaningful within the context of the purpose of the legislation."

23    *Id.* Moreover, "a statute should not be read in a manner that renders a part of a statute

24    meaningless or produces an absurd or unreasonable result." *Id.* "But if the statutory

25    language is ambiguous or fails to address the issue, this court construes that statute

26    according to that which reason and public policy would indicate the legislature intended."

27    *Cty. of Clark v. Sun State Props., Ltd.*, 72 P.3d 954, 957 (Nev. 2003).

28    ///

1

**1.    Video Service Provider**

2      Plaintiff asserts that Defendants do not fall within the video service exclusion, NRS

3   711.141(3)(a), and thus are video service providers. (ECF No. 38 at 12-14.) Specifically,

4   Plaintiff asserts that (1) Defendants do not provide their video content "as part of" a

5   service since their video content is the "entire" service they provide, and (2) Defendants

6   are not offering their video services via the "public Internet" as their services are offered

7   only to paying subscribers. (*Id.*) Hulu counters that its business provides more than just

8   stream videos and a restriction on access is immaterial to whether something is "public."

9   (ECF No. 45 at 11-12.) Netflix counters that "public," by common meaning and definition,

10   is being accessible to all members of a community, and paying a fee does not necessarily

11   make something less public. (ECF No. 44 at 10-11.) The Court finds Defendants'

12   arguments more persuasive.

13      NRS § 711.151(1) defines a "video service provider" to be "any person that

14   provides or offers to provide *video service* over a video service network to subscribers[.]"

15   (emphasis added). The term "video service" is defined as:

16
17      "Video service" means the provision of multichannel video programming
        generally considered comparable to video programming delivered by a
18      television broadcast station, cable service or other digital television service,
        whether provided as part of a tier, on-demand or on a per-channel basis,
19      without regard to the technology used to deliver the video service, including,
        without limitation, Internet protocol technology or successor technology.

20   NRS 711.141(1). This term, however, excludes "[a]ny video content provided solely as

21   part of, and through, a service which enables users to access content, information,

22   electronic mail or other services that are offered via the public Internet." NRS §

23   711.141(3)(a).

24      Plaintiff states in their complaint that Defendants offer the online streaming of "a

25   library of films and television series [or] programs."[3] (ECF No. 1 at 2.) This is important

26   because the term "video service" does not include "*[a]ny* video content provided solely as

27

28      [3]The Court notes that the complaint states that Hulu additionally offers "online
        streaming of live video programming." (ECF No. 1 at 2.)

part of . . . a service which enables users to access content[.]" NRS § 711.141(3)(a) (emphasis added). The individual films and individual television programs Defendants provide are each a piece of their video content library and thus a "part of" a service, and not the "entire" service. Whether Hulu provides more services than stream videos—as Hulu argues—is immaterial. Nevertheless, Plaintiff's argument suggests the Court read "any" as "all" video content, but that simply is not the statutory language, and the Court declines to read it as so. *See White Pine Cty.*, 211 P.3d at 882 ("Where a statue is clear on its face, a court may not go beyond the language of the statue in determining the [l]egislature's intent."). As such, Plaintiff's argument that Defendants' video content is the "entire" and not "part of" the services provided, and therefore not excluded, does not persuade the Court to agree that Defendants are video service providers.

Plaintiff further states in their complaint that Defendants' subscribers can access Defendants' offerings "using an Internet-connected device." (ECF No. 1 at 2-3.) Whether Defendants are excluded as video service providers depends, in part, on the Court determining if the video services Defendants provide are offered via the "public Internet." Under the statutory interpretation standard set forth above, the words in the statute should be given its plain meaning. *See White Pine Cty.*, 211 P.3d at 882. "Public" is used in this context as an adjective and is commonly understood to mean "for the use and benefit of all." *See* Webster's New World Dictionary of American English 1087 (Victoria Neufeldt et al. eds., 3rd ed. 1988). Despite Plaintiff's argument, nothing in that definition states or suggests paying a fee renders the "Internet" not public. As Netflix points out in their reply (*see* ECF No. 44 at 10-11)—and the Court agrees—public parks are for the use and benefit of all, and merely requiring an individual to pay an entrance fee for park access does not make it less—or not—"public."

In sum, the Court finds that Defendants' services fall within the exception under NRS § 711.141(3)(a). Plaintiff therefore cannot seek franchise fees under the Video Service Law. Accordingly, the Court will grant Defendants' Motions.

///

7

1

2.        **Private Right of Action**

2        Even if the exception found at NRS § 711.141(3)(a) does not apply to Defendants'

3   services, the Court agrees with Defendants that the Video Service Law does not provide

4   for local governments like Plaintiff to assert their claims here. The parties dispute as to

5   whether Plaintiff and local governments have a private right of action under the statute.

6   The dispute centers on the language of § 711.680 and § 711.850. The Court will discuss

7   these sections in turn and address the parties' arguments.

8

a.        **NRS § 711.680**

9        Defendants argue any claim regarding the franchise fee must be brought by the

10   Nevada Attorney General in accordance with NRS § 711.680(4). (ECF Nos. 28 at 26-27,

11   32 at 11-12.) Hulu additionally argues nonpayment is an "underpayment" of a franchise

12   fee.[4] (ECF 32 at 11-12.) Plaintiff counters that it has standing and § 711.680(4) is

13   inapplicable as this is not an action to "recover a disputed underpayment." (ECF No. 38

14   at 29-30 (quoting § 711.680(4)).) More specifically, Plaintiff counters that § 711.680(4)

15   authorizes the Attorney General to merely bring one cause of action—underpayment—

16   and does not give the Attorney General exclusive authority to bring all actions. (*Id.*)

17   Defendants' arguments are more persuasive.

18        NRS § 711.670(1) states in part that "the local government may require a video

19   service provider to pay a franchise fee to the local government[.]" Section 711.680(4)

20   further states that "[a]ny action to recover a disputed *underpayment* of a franchise fee . .

21   . must be commenced and prosecuted by the Attorney General on behalf of the affected

22   local governments." (emphasis added). The Video Service Law, however, is silent in

23   defining the term "underpayment" and the legislative history provides no guidance as to

24   the legislative intent with respect to this section.

25        Plaintiff's argument that this is not an action "to recover a disputed underpayment"

26   has merit. The Court recognizes that the dictionary definition of "underpayment" is "to pay

27

28        [4]At the Hearing, Netflix also took this position that "underpayment" includes
nonpayment. (ECF No. 98.)

to little, or less than the due amount" or "to pay too little to someone." *See* Webster's New World Dictionary of American English 1455 (Victoria Neufeldt et al. eds., 3rd ed. 1988). Therefore, Plaintiff is correct that under their proposed reading of the statute, the Attorney General must commence an action to resolve an underpaid franchise fee, rather than an action for failing to obtain a certificate of authority to provide a video service, which Defendants have not obtained.

However, the Court also recognizes Defendants' argument that the common meaning of "underpayment" in this context can include nonpayment. *See, e.g., Elgee v. Ret. Bd. of the Pub. Emple. Ret. Sys. of Idaho*, 490 P.3d 1142, 1149 (Idaho 2021) (affirming district court's reasoning that "underpayment" encompasses "nonpayment" and further stating that "it is axiomatic that nonpayment is underpayment."); *Ozarowsky v. Owens-Illinois, Inc.*, Case No. 09cv1622, 2010 WL 2696789, *5 (W.D. Pa. July 6, 2010) (articulating that plaintiff received "the extreme underpayment" which was a "no payment"); *Gov't of the Virgin Island v. Innovation Communs. Corp.*, 215 F. Supp. 2d 603, 607 (D.V.I. 2002) (finding that a legislative body intended to treat "nonpayment" and "underpayment" the same as both are essentially a failure to pay an obligation in full).

Because the general provisions of the Video Service Law provide no guidance on the term, nor does legislative history shine light on the ambiguity, the Court will construe the statute according to "reason and public policy would indicate the legislature intended" with respect to giving local governments a private right of action. *See Cty. of Clark*, 72 P.3d at 957. The Court thus looks to NRS § 711.850.

### b.    NRS § 711.850

Defendants argue there is no expressed statutory provision in the Video Service Law giving Plaintiff a private right of action. (ECF Nos. 28 at 26-27, 32 at 11-12.) Hulu additionally argues there is no evidence the Nevada Legislature intended to give local governments such a right. (ECF 32 at 11-12.) Plaintiff counters that local governments have an implied right of action under Nevada law, citing the three-factors test set forth in *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 101 (Nev. 2008). (ECF No. 38 at 29-

30.) At the Hearing, Plaintiff also argued NRS § 711.850 was not a comprehensive remedial scheme because it would be illogical to interpret the statute as an exclusive remedy for *both* local governments and video service providers. (ECF No. 98.) According to Plaintiff, if a provider lodged a complaint against the State of Nevada, it would be an instrumentality of the State—the Consumer's Advocate of the Bureau of Consumer Protection—that decides whether to file a lawsuit and could be tasked with representing the provider in a case against the State. (*Id.*) The Court disagrees with Plaintiff.

NRS § 711.850(1) states that a "video service provider or a local government may file with the Bureau of Consumer Protection a written complaint alleging a violation of the provisions of this chapter." If a written complaint is filed by a video service provider, "the Consumer's Advocate *may* commence in a district court an action to enforce the provisions of this chapter." NRS § 711.850(2) (emphasis added). The Consumer's Advocate therefore is not required to file an action, nor would they be tasked with representing providers as Plaintiff argued.

The Court's reasoning is further supported by the noticeable exclusion of "local government" from NRS § 711.850(3). Indeed, it is illogical as Plaintiff argued, if the remedial scheme pursuant to § 711.850 applied to *both* local governments and providers. But § 711.850(3) states that "[i]f such an action is commenced *against a video service provider . . . .*" only. It does not subsequently include "*or a local government*" as in §§ 711.850(1), 711.850(2). This suggests the Nevada Legislature intended for actions against video service providers in violation of any provisions of the chapter—including a failure to obtain a certificate of authority to provide a video service in Nevada—to be brought by the Office of the Attorney General, not local governments. As such, "reason and public policy would indicate" that both "nonpayment" and "underpayment" actions be uniformly brought by one party—the State. *See Cty. of Clark*, 72 P.3d at 957.

Moreover, legislative history supports Defendants' argument. The purpose of the Video Service Law was to create a uniform system at the state level for the management, approval, and enforcement of franchise fees. Assembly Bill 526 was enacted to

10

1   "establish[] a new regulatory structure for video service providers" and "limit[] the

2   regulatory powers of local governments regarding video service providers." *See Legis.*

3   *Hist.* at 433. This purpose is further evident in the language of NRS § 711.410, which

4   places several limitations on the power of the local governments and establishes duties

5   and powers of the State for the "purpose of bringing about a fair and reasonable

6   competition for video service" via the Secretary of State. Inclusion of § 711.410 suggests

7   the Nevada Legislature intended to preclude any private right of action.

8          If the Nevada Legislature intended for there to be such a right, the Court agrees

9   with Hulu that the Legislature would have done so. *See Doe v. Mozer*, Case No. 2:16-cv-

10  00210-KJD-VCF, 2016 WL 3452489, *3 (D. Nev. June 21, 2016) ("It is presumed the

11  legislature did not intend to create a private right of action unless the statute expressly

12  provides one." (citing *Baldonado*, 194 P.3d at 104)). Absent expressed language, a

13  private right of action can only be implied in consideration of: "(1) whether the plaintiffs

14  are of the class for whose special benefit the statute was enacted; (2) whether the

15  legislative history indicates any intention to create or deny a private remedy; and (3)

16  whether implying such a remedy is consistent with the underlying purpose of the

17  legislative scheme." *Baldonado*, 194 P.3d at 101 (internal quotes, brackets, and citations

18  omitted). Despite Plaintiff's contentions, the Court finds no legislative history indicates the

19  Legislature had any intention of creating a private right of action and as discussed above,

20  implying such a remedy would be inconsistent with the purpose of the Video Service Law

21  as expressed by the Legislature.

22          The Court finds for the reasons stated herein and in recognizing the public policy

23  reasons for uniformity, the Nevada Legislature intended the State via the Office of the

24  Attorney General to enforce actions, remedies, and penalties for violation of the

25  provisions of the chapter. Accordingly, local governments—including the City of Reno—

26  do not have a private right of action.

27  ///

28  ///

1

**V.     CONCLUSION**

2          The Court notes that the parties made several arguments and cited to several

3   cases not discussed above. The Court has reviewed these arguments and cases and

4   determines that they do not warrant discussion as they do not affect the outcome of the

5   Motions before the Court.

6          It is therefore ordered that Defendant Netflix, Inc.'s motion to dismiss (ECF No. 28)

7   is granted.

8          It is further ordered that Defendant Hulu, LLC's motion to dismiss (ECF No. 32) is

9   granted.

10         It is further ordered that Plaintiff the City of Reno's complaint (ECF No. 1) is

11   dismissed.

12         The Clerk of Court is directed to enter judgment accordingly and to close this case.

13         DATED THIS 3rd Day of September 2021.

14

15

16                                          _____
                                            MIRANDA M. DU
17                                          CHIEF UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28